IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| THOMAS CLAY | § | |
| v. | § | CIVIL ACTION NO. 9:05cv50 |
| TDCJ-CID, ET AL. | § | |

MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND ENTERING FINAL JUDGMENT

The Plaintiff Thomas Clay, proceeding *pro se*, filed this lawsuit complaining of alleged violations of his constitutional rights. This Court ordered that the matter be referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

Clay complained about a use of force incident which occurred on December 17, 2004. According to Clay, Lt. Handley came to his cell and told him that he, Handley, had a court order to get Clay's property, and that he had an authorization to use force if necessary. Clay said that he was sprayed with pepper spray for "no reason" by Morgan, on Handley's orders, and that Handley had been ordered to do this by Major Harris.

Clay said that there was "no justification" for the use of force and that he had not done anything. Handley told him that the officers were there to retrieve his property for inventory. He stated that he had a writ due in the Southern District and wanted to talk to Major Harris. Handley told him to comply with the prison strip search procedures, but Clay could not do so because he says that he cannot stand up or walk.

Clay stated that when Handley came to the cell, the lieutenant had a video camera turned on. Handley told Clay that he had orders from the federal court and from Major Harris. When Handley ordered him to stand up, Clay replied that he could not stand up. Handley then told Morgan to spray

1

him while he was naked. After Clay was sprayed with pepper spray, he said, the officers picked him up and his back "popped." He could hear the nurse saying that he, Clay, was claiming that his back was injured. Clay indicated that his skin "broke out" from the spray, but gave no further details.

Clay added that he was not taken to the infirmary because the nurse was on the scene. He said that the nurse did not touch him but just "said things on camera." He objected to the Court's reviewing his medical records.

The Magistrate Judge received a certified, authenticated copy of the video tape of the incident. The Magistrate Judge summarized the videotape as follows:

> The tape opens with Officer Handley stating that Clay has refused to exit his cell. Clay is seen in the cell sitting on the bunk. Handley orders him to undergo a strip search and submit to hand restraints so that he can be removed from the cell and his property collected. Clay says that he cannot walk because of his back. Handley states for the camera that Clay has refused so a second order will be given. Clay slides over by the cell door and puts his hands out, but Handley says that Clay must undergo a strip search. Clay says "you didn't tell me that" and Handley says that he just did.
>
> Clay removes his clothes and hands them out of the cell. Handley tells him several times to stand up, but Clay replies that he cannot stand because of his back. After repeated orders, Clay is sprayed with pepper spray. Handley tells him to stand and Clay says that he can't stand up because of his back. Clay then bends over and gets down on the floor.
>
> After a few minutes, he is sprayed again with pepper spray. Handley keeps telling him that he needs to comply with the order. Clay twists and turns while laying on the floor.
>
> A few moments pass after the second spraying, and the cell door is opened and the use of force team goes into the cell. Handley tells the team to restrain Clay and stand him up. Clay keeps saying "oh, my back" He continues to yell as he is carried out of the cell. He says that he has not walked in a year and a half and that he cannot stand up because of a back injury.
>
> Clay then switches to legal terminology. He states that "this is retaliation, that's all it is, retaliation with no justification." He says that the officers are deliberately indifferent to him and that they knew he could not stand because he was assaulted on September 15, 2002, and that this was retaliation.
>
> The nurse arrives and Clay says that his back is injured, his legs are swollen, he has not walked since 2003, and he has a herniated disc. The nurse examines him and talks to Handley, who announces that the nurse has noted no injuries. The nurse then leaves.

> Clay reverts to legal terminology, stating repeatedly that the incident needs to be documented and that he will call everyone as witnesses in his lawsuit. He says that this was an unnecessary use of force, done without justification and in retaliation. Clay is then placed back in his cell, yelling and characterizing the incident as an "unnecessary use of force."

After review of the videotape, the Magistrate Judge issued a Report on December 30, 2005, recommending that Clay's lawsuit be dismissed. Although Clay refused to allow the Court to review his medical records, the Magistrate Judge took judicial notice of court orders entered in other lawsuits filed by Clay, in which appears the information that TDCJ-CID medical personnel have unanimously concluded that there is no reason why Clay should not be able to walk. The Magistrate Judge reviewed the events as shown by the video in light of the Supreme Court's decision in Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995 (1992), as well as the Fifth Circuit's decision in Baldwin v. Stalder, 137 F.3d 836, 839 (5th Cir. 1998), and concluded that Clay had failed to show a violation of his constitutional rights. Clay filed objections and supplemental objections to the Magistrate Judge's Report on January 30, 2006.

In his objections, Clay says that he has been sent to a regional medical facility for evaluation and therapy. He says that the Magistrate Judge's Report is in "total contradiction" of Supreme Court and Fifth Circuit precedent because the Defendants have not answered. He complains that the Magistrate Judge used "uncertified evidence," apparently meaning the certified videotape, and of citing medical records over his objections, despite the fact that the Magistrate Judge simply noted findings about Clay's condition made in other cases and did not refer to the medical records in this case at all.

Clay contends that the Magistrate Judge applied "the wrong legal standard," which he does not identify. He says that he "cannot point to material facts" and again argues that the defendants should have been required to answer. He says that he has never conceded that his behavior precipitated the actions of the defendants, but the Report nowhere says that Clay so conceded. Instead, the Report simply says - as does Clay - that he was ordered to submit to a strip search, which he refused, and the chemical agents were thereupon applied.

Clay says that he was not able to review the video tape and questions how such information always seems to get into the Reports issued by Judge McMee, the Magistrate Judge then assigned to the case. He says that it is "clear error" for the Magistrate Judge to say that claims are frivolous "when as a matter of law which authenticated evidence will show if obtained." [sic]

Clay says that the Magistrate Judge Report is contrary to the Fifth Circuit's rule that *pro se* pleadings are to be taken as true. He says that a hearing under 28 U.S.C. §1915(d) has not been held and that his claims are not frivolous as a matter of law. Clay argues that there is "a genuine issue of fact" as to his retaliation claims and complains that the General Counsel of TDCJ-CID and the U.S. District Court for the Eastern District of Texas have a "common interest" in keeping out prisoner lawsuits. He says that no "lesser means" was used in the incident at issue because he had no opportunity to exit the cell, and argues, in a conclusory manner, that the use of force was not done in good faith and for the purpose of causing harm. He cites a 1981 case from the Seventh Circuit in support of this assertion.

Clay again argues that there is a genuine issue of material fact that there is evidence which will show that no lesser means were applied, including no opportunity for Clay to exit the cell to the best of his ability. He says that there is evidence which will show that he cannot stand or walk and that the medical staff simply noted adverse findings to hide this fact. He also says that the Magistrate Judge erred in concluding that Clay had not set out a chronology of events from which retaliation could plausibly be inferred.

In his supplemental objections, Clay asserts that the Magistrate Judge "stepped in place of the attorney for the defendants" and made the Report an "affirmative defense" for the defendants. He refers to the Magistrate Judge's use of "unauthenticated evidence," apparently referring to the certified and authenticated video tape, and says that the Magistrate Judge's conclusion that the use of the chemical agent was reasonably necessary was unsupported by the evidence. Clay also says that there was no evidence that he was "recalcitrant," despite the fact that he acknowledges that he refused to comply with repeated orders to submnit to a strip search. Clay reiterates that he was never

afforded an opportunity to exit the cell on his own and that the defendants intended to use force to inflict suffering and harm on him. He says that accepting the Magistrate Judge's Report would simply require that the proceedings go to the Fifth Circuit, which he terms a "waste of judicial resources."

Although Clay vehemently objects to the video tape, on the inaccurate ground that it was not authenticated, the fact is that the video tape does not differ in any significant respect from Clay's own account of the incident. He says that Lt. Handley ordered him to comply with the strip search procedure and that he refused, saying that he could not do so. After he refused to comply, chemical agents were used on him. He says that the nurse did not touch him but "just said things on camera." This is essentially what appears on the tape.

The central issue in the case thus is not what happened in the incident itself; Clay's testimony and the video tape do not disagree in this regard. The undisputed facts are that Clay was ordered to submit to a strip search, he refused to do so on the basis that he could not stand or walk, the medical department had previously concluded that there was no reason why he should not be able to stand or walk, and chemical agents were used on him. Although Clay argues that the medical department made false entries in his chart, he offers no reason to believe that the defendants in this case should have known this. The Magistrate Judge concluded that the defendants had no obligation to believe Clay's assertion that he could not walk over the medical department's assertion that he could, nor did the defendants have an obligation to believe that the medical department was involved in a conspiracy against Clay. The Magistrate Judge was correct in this regard.

In other words, the Defendants came to Clay's cell and ordered him to submit to a strip search, in conformity with standard procedure. Clay refused, saying that he could not stand or walk, but the information from the medical department said that this was not true. *Whether or not the medical department's information was accurate*, it was reasonable for the Defendants to believe this information, rather than Clay's contrary assertions. *Cf.* Kayser v. Caspari, 16 F.3d 280, 281 (8th Cir. 1994) (prisoner's self-diagnosis alone will not support a medical conclusion)

Consequently, the best information available to the Defendants was that Clay was able to stand and walk, and was simply feigning inability to do so. As the Magistrate Judge observed, several courts have held that under these circumstances, the use of chemical agents is not a constitutional violation. *See, e.g.*, Clemmons v. Greggs, 509 F.2d 1338, 1340 (5th Cir. 1975) (*citing* Landman v. Peyton, 370 F.2d 135 (4th Cir. 1966); Bailey v. Turner, 736 F.2d 969 (4th Cir. 1984); Soto v. Dickey, 744 F.2d 1260 (5th Cir. 1984).

In analyzing the claim under the undisputed facts, the Magistrate Judge stated that the Fifth Circuit has set out five factors which should be considered in use of force cases. These are: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. Baldwin v. Stalder, 137 F.3d at 839. The Magistrate Judge then reviewed each of these factors individually and determined that Clay's claims foundered on each of them. Clay does not specifically challenge the Magistrate Judge's conclusion as to any of these factors; instead, he simply argues, in a conclusory manner, that the Defendants used force maliciously and sadistically for the very purpose of causing harm. In so saying, however, Clay assumes that the Defendants were aware that he could not walk and used chemical agents to punish him for not complying with an order that they knew he could not follow, which assumption is incorrect; instead, as noted above, the information available to the officers was that Clay could walk and was simply refusing to do so. Although Clay argues that this information was wrong, he makes no showing, nor does it otherwise appear, that the Defendants had any duty to believe Clay rather than the medical department.

Similarly, although Clay's argument that no "lesser means" was used fails because he makes no showing that the Defendants should have reasonably known or believed that any such "lesser means" were necessary. The officers faced a situation in which a prisoner refused to comply with standard procedures on the basis that he was physically unable to do so, which basis was said by the

medical department not to be true. Under these circumstances, the use of the chemical agent was not an unreasonable response to the breach of security posed by Clay's failure to obey the orders.

Although Clay cites the Seventh Circuit case of Lock v. Jenkins, 641 F.2d 488 (7th Cir. 1981) in support of his contention, Lock is inapplicable because it concerns pre-trial detainees rather than convicted felons such as himself.[1] The Magistrate Judge accurately cited relevant caselaw holding that the use of chemical agents on inmates, even when confined in their cells, did not violate the Constitution. Clay's objections are without merit.

In addition, Clay's lawsuit faces a more serious obstacle. At the time that Clay filed this lawsuit, he had previously had at least three lawsuits dismissed as frivolous or for failure to state a claim upon which relief may be granted. *See* Clay v. Christus Spohn Memorial, et al., C-01-002 (S.D.Tex., dismissed as frivolous July 5, 2002, no appeal taken); Clay v. K-Mart, C-01-mc-0036 (S.D.Tex., dismissed as frivolous and for lack of subject matter jurisdiction September 3, 2001, no appeal taken); and Clay v. Nueces County Sheriff's Dept., et al., C-01-158 (S.D.Tex., dismissed as frivolous April 12, 2002, no appeal taken).

In other cases previously filed by Clay, there were partial dismissals of claims as frivolous or for failure to state a claim, including Clay v. Ramos, et al., C-00-0409 (S.D.Tex. 2001) (certain claims dismissed for failure to state a claim on April 3, 2001, and final judgment entered after Clay refused to cooperate in trial preparation, which the Southern District of Texas termed a "clear record of contumacious conduct"); Clay v. Nueces County Jail, et al., C-00-0477 (S.D.Tex.) (certain claims and parties dismissed as frivolous and for failure to state a claim on March 28, 2002; final judgment with prejudice entered on May 7, 2002, for failure to prosecute); and Clay v. Vasquez, et al., C-01-0135 (S.D.Tex.) (certain claims and parties dismissed as frivolous and for failure to state a claim on March 12, 2002; final judgment with prejudice entered on May 7, 2002, for failure to prosecute).

---

[1] Furthermore, although Clay does not mention this, the Seventh Circuit in Lock found that the prison officials were immune from an award of monetary damages for the use of the chemical agents.

The Fifth Circuit has held that partial dismissals of claims as frivolous, even if the remainder of the claims are dismissed on other grounds, can count as strikes. Comeaux v. Cockrell, 72 Fed.Appx. 54 (5th Cir., July 15, 2003) (not selected for publication in the Federal Reporter), *citing* Patton v. Jefferson Correctional Center, 136 F.3d 458, 463 (5th Cir. 1998). The Court further notes that in Clay v. Correctional Management, G-05-569, the Southern District specifically said that Clay had three strikes and referred to him as a "recreational litigator."

28 U.S.C. §1915(g), added by Act of Congress on April 26, 1996 as part of the Prison Litigation Reform Act, provides that:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the ground that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

As set forth above, at the time that Clay filed this lawsuit, he had previously received at least three strikes, and thus falls under the Act. The present lawsuit was signed well after the enactment of the Act.

The Fifth Circuit has addressed the validity and scope of 28 U.S.C. §1915(g). Carson v. Johnson, 112 F.3d 818 (5th Cir. 1997). In Carson, the plaintiff argued that 28 U.S.C. §1915(g) was unconstitutional because it blocks access to the courts and discriminates against prisoners. However, the Court held that 1915(g) does not block prisoners from filing civil rights lawsuits, but merely from seeking *in forma pauperis* status to do so. The Court noted that deterring frivolous and malicious lawsuits is a legitimate state interest and said that "Carson's own lengthy litigation history is the strongest possible argument for the PLRA's rationality." The same is true for Clay's history of filing frivolous lawsuits.

On December 31, 1996, the Fifth Circuit decided another case dealing with 28 U.S.C. §1915(g). Adepegba v. Hammons, 103 F.3d 383 (5th Cir. 1996). In this case, the Fifth Circuit stated as follows:

> Section 1915(g) is a procedural rule governing the process by which indigent individuals, including prisoners, bring civil actions or appeals in the federal courts. Before amendment, section 1915 allowed qualifying prisoners to bring an action or appeal without prepaying court fees, which are normally in excess of $100. [citation omitted].
>
> The amended provisions of section 1915(b) allow qualifying individuals to pay the filing fee in installments over time. 28 U.S.C. §1915(b), as amended. Although Section 1915(g) attaches consequence to past actions, we find that these consequences are matters of procedure. Section 1915(g) does not affect a prisoner's substantive rights, and it does not block his or her access to court. A prisoner may still pursue any claim after three qualifying dismissals, but he or she must do so without the aid of the i.f.p. procedure.

Adepegba, 103 F.3d at 386-87.

The revocation of the privilege bestowed by Section 1915 is not a new phenomenon. The Fifth Circuit stated that before the Prison Litigation Reform Act, courts routinely revoked a prisoner's ability to proceed *in forma pauperis* after numerous dismissals. *See, e.g.*, Green v. Carlson, 649 F.2d 285 (5th Cir. 1981). By enacting Section 1915(g), Congress determined that three prior qualifying dismissals (i.e. dismissals of lawsuits or appeals as frivolous) constituted *per se* abuse of the *in forma pauperis* privilege. Thus, the Fifth Circuit said that the "three strikes" provision of 28 U.S.C. §1915(g) merely codified existing practice in the courts designed to prevent prisoners from abusing the *in forma pauperis* privilege. Adepegba, 103 F.3d at 387. The Fifth Circuit noted that prisoners who are not allowed to proceed *in forma pauperis* may pursue their substantive claims, just like anyone else, by paying the filing fee. This requirement is neither novel nor penal and does not increase the prisoner's liability, but puts those who abuse a privilege on the same footing as everyone else. The Fifth Circuit expressly found that Section 1915(g) did not impair prisoners' rights, increase their liability, or impose a new duty, and concluded by holding that Section 1915(g) was applicable to Adepegba's appeal, despite the fact that this appeal was filed in December of 1995, four months prior to the enactment of the PLRA.

In this case, Clay has had at least three lawsuits previously dismissed as frivolous, as well as others which had partial dismissals as frivolous, and so comes under the statute. He did not pay the filing fee of $250.00, and he made no showing that he was facing an imminent threat of serious

physical injury at the time that he filed the lawsuit. *See* Baños v. O'Guin, 144 F.3d 883, 885 (5th Cir. 1998). Prisoners can invoke the "imminent danger" exception only to seek relief from a danger which is imminent at the time that the complaint is filed. Abdul-Akbar v. McKelvie, 239 F.3d 307, 312 (3rd Cir. 2001); thus, prisoners cannot use the "imminent danger" exception to file lawsuits over matters not related to the alleged danger.

Clay has not shown that he was in imminent danger, at the time that the lawsuit was filed, because of an incident which happened several months earlier. Abdul-Akbar, 239 F.3d at 315-16 and n.1 (inmate complaining of use of pepper spray in the past did not show "imminent danger" despite allegations that prison officials engaged in "continuing harassment, plots to hurt or kill him, and other forms of retaliation"). Because Clay has not paid the filing fee nor shown that he was in imminent danger of serious physical injury at the time that this lawsuit was filed, his lawsuit is also amenable to dismissal under 28 U.S.C. §1915(g); however, Clay should be allowed a reasonable period of time in which to pay the filing fee and proceed with his lawsuit should he choose to do so.

The Court has conducted a careful *de novo* review of the pleadings and records in this cause, as well as the Report of the Magistrate Judge and the supplemental objections thereto. Upon such *de novo* review, the Court has concluded that the Report of the Magistrate Judge is correct and that the Plaintiff's objections are without merit. It is accordingly

ORDERED that the Plaintiff's objections are overruled and the Report of the Magistrate Judge is ADOPTED as the opinion of the District Court. It is further

ORDERED that the Plaintiff's *in forma pauperis* status is hereby REVOKED and the above-styled civil action be and hereby is DISMISSED with prejudice as frivolous. It is further

ORDERED that, in the alternative, this lawsuit is DISMISSED with prejudice as to the refiling of another *in forma pauperis* lawsuit raising the same claims as herein presented, but without prejudice to the refiling of this lawsuit without seeking *in forma pauperis* status and upon payment of the full $250.00 filing fee. It is further

ORDERED that any and all motions which may be pending in this action are hereby DENIED.

So **ORDERED** and **SIGNED** this 3 day of **March, 2006.**

_____
Ron Clark, United States District Judge